IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **ALYDIA GIBBS,** | } |
| **Plaintiff,** | } |
| v. | } Case No. 4:20-CV-01182-RDP |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Alydia Gibbs brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). After careful review and for the reasons provided below, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

On April 11, 2017, Plaintiff filed applications for disability, DIB, and SSI, alleging she became disabled beginning February 20, 2017. (R. 97, 203-15). Plaintiff's applications were denied initially and upon review. (R. 121-26). On January 18, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 139-40). That request was granted and a hearing was held on July 1, 2019, before ALJ Doug Gabbard. (R. 42-72, 141-55, 161). Plaintiff, her attorney, and Vocational Expert ("VE") Diana Kizer were present at the hearing. (R. 42).

In the ALJ's decision dated August 15, 2019, the ALJ determined that Plaintiff had not been under a disability, as defined in the Act, from February 20, 2017 through the date of his

decision. (R. 35). On September 10, 2019, Plaintiff's counsel submitted a request to the Appeals Council for review of the ALJ's decision. (R. 202). Plaintiff submitted additional evidence that included a letter from Go Medical dated October 9, 2019. (R. 9). The Appeals Council denied Plaintiff's request for review, determining that the additional evidence did not show a reasonable probability of changing the outcome of the ALJ's decision. (R. 1-3). On June 17, 2020, the ALJ's decision became the final decision of the Commissioner, and, therefore, a proper subject of this court's appellate review. (R. 1-8).

At the time of the hearing, Plaintiff was 35 years old, had two years of college, and a Certified Nursing Assistant ("CNA") license. (R. 48, 203). Plaintiff has past work experience as a nursing assistant, answering calls in a call center, customer service, and as a home healthcare attendant. (R. 33, 66, 283-90). Plaintiff alleges that her ability to work is limited by diabetes, neuropathy, high blood pressure, spinal stenosis, anxiety, depression, stress fractures of the feet, Vitamin D deficiency, carpal tunnel, chronic knee pain in the right knee, fibromyalgia, chronic fatigue and immune dysfunction syndrome, and a herniated disc. (R. 260).

Plaintiff has an extensive medical record, particularly regarding back pain. However, the only portions relevant to the court's review of the ALJ's decision pertain to the medical evidence concerning her hands, pain, and medication side effects (or lack of side effects).

The administrative record of Plaintiff's medical history begins on February 8, 2012. (R. 1000). Plaintiff presented to the Huntsville Hospital Emergency Department with complaints of back pain and headache pain. (*Id.*). Plaintiff reported that her pain level was 10/10 and worsened with movement. (*Id.*). On March 14, 2012, Plaintiff returned with complaints of vomiting, a rash, and sharp, non-radiating pain in her lower back. (R. 1005-007). Plaintiff rated her pain level as

9/10. (R. 1006-07). Her treatment plan consisted of medication and to follow-up as needed. (R. 1012).

On January 9, 2015, Plaintiff was seen at American Family Care for back pain. (R. 727). Plaintiff was diagnosed with back pain "NOS" (among two non-related infections). (R. 731). Plaintiff was administered two intramuscular injections, prescribed medication, and discharged. (R. 729-31). In that same week, Plaintiff was seen at Northeast Orthopedic Clinic for an evaluation of left hand pain and some back pain. (R. 833). Upon examination, Plaintiff was found to have a full range of motion of the fingers, sensation intact, and x-rays were found to be negative. (R. 835). Plaintiff was told to discuss her hand cramping with her medical doctor. (*Id.*). It was noted that Plaintiff had a history of degenerative disk disease and would be referred for evaluation. (R. 835).

On February 17, 2015, at Gadsden Regional Medical Center, Plaintiff had an MRI of her lumbar spine without contrast. (R. 724, 806). On March 3, 2015, Plaintiff met with Dr. Hartzog to review the images. (R. 706). Dr. Hartzog saw "some rather significant endplate changes at L2 and 3 associated with the same level some facet arthropathy creating foraminal narrowing as well as a fairly significant disc bulge creating some central compression as well." (*Id.*). It was recommended that Plaintiff be set up for lumbar epidural steroid blocks, refill her prescriptions of Norco and Flexeril for pain, and follow up with her after the series of steroid blocks. (*Id.*).

Plaintiff was next seen at American Family Care on June 5, 2015, with complaints of body aches, anxiety, and generalized malaise. (R. 732). Plaintiff was prescribed medication and referred to a rheumatologist. (R. 735-36). On July 2, 2015, Plaintiff visited Dr. James Ready, a rheumatologist at the Anniston Medical Clinic. (R. 712). After evaluation, Dr. Ready was suspicious that Plaintiff was developing rheumatoid arthritis; however, her physical exam did not

demonstrate definite joint synovitis and her joint films were not showing any inflammatory damage at that time. So, Dr. Ready was unable to confirm the diagnosis. (*Id.*). The films did show some osteoarthritic damage in the ankles and right knee and some mild changes in the hands. (*Id.*). Plaintiff's Prednisone dose was increased, and she was placed on a non-steroidal anti-inflammatory drug. (*Id.*).

On September 28, 2015, Plaintiff saw Dr. Stephanie Morgan at Doctor's Care Inc. (R. 788). Plaintiff complained of difficulty sleeping, fatigue, arm pain radiating into her hands, and leg pain radiating into her feet. (R. 790). In-house lab results and tests showing no acute fractures or dislocations were reviewed with Plaintiff. (*Id.*). On December 1, 2015, based on Dr. Morgan's referral, Plaintiff presented to Maddox Pain Management with complaints of experiencing lower back pain and shooting pains at times down her right side. (R. 719). Plaintiff was found to have degenerative disk disease of the lumbar spine with axial pain; possible facet joint arthropathy of the lumbar spine; and restless legs syndrome. (R. 720). Dr. Morgan's plan was to start Plaintiff on medication and follow up in a month. (*Id.*).

Two days later, Plaintiff visited Raines Family Medicine with complaints of fatigue and weight gain. (R. 449). Plaintiff reported that she "stays tired and fatigued." (R. 449). Plaintiff denied any numbness or tingling but reported joint pain and swelling. (R. 449). Further, Plaintiff denied any depressed mood and anxiety. (R. 450). After assessing Plaintiff, Dr. Raines' plan was to run a VAP fatigue panel and make further recommendations after labs were reviewed. (R. 451).

From January 5, 2016 to July 28, 2016, Plaintiff was seen at the Pain and Wound Care Center. (R. 421-39). On January 5, 2016, Plaintiff presented with complaints of pain in both shoulders, arms, neck, low back, and both legs. (R. 435). She also reported numbness and tingling

in both hands and both feet. (*Id.*). On January 19, 2016, Plaintiff reported constant aching, numbness, and tingling in her right arm. (R. 433). On February 18, 2016, she reported constant pain in both legs and arms, as well as numbness and tingling in her right leg. (R. 431). Plaintiff also reported that her medications work with no adverse effects. (*Id.*). On March 24, 2016, she reported constant pain all over, in addition to numbness and tingling in both legs. (R. 429). Again, Plaintiff reports her medications were working well. (*Id.*).

On April 28, 2016, Plaintiff presented to the Pain Center with complaints of "constant pain." (R. 427). It was noted that "to [sic] much activity" caused her pain to increase, but "medication [and] elevating [her] legs" helped relieve her pain. (*Id.*). Plaintiff's last visit to the Pain Center was on July 28, 2016, again reporting "constant pain," and again it was noted that Plaintiff's "medication[s] work." (R. 421).

On August 2, 2016, during a walk-in visit at Doctor's Care, Plaintiff reported "[right] knee pain with radiation to [her] ankle and hip" and "increased fatigue." (R. 772). Plaintiff was found to have limited range of motion to the right knee; mild swelling; tenderness to range of motion; and no neurovascular deficits. (R. 774). An x-ray of Plaintiff's right knee found no acute fracture or dislocation. (*Id.*). Plaintiff returned to Doctor's Care on August 5, 2016, "still [complaining of] right] knee pain." (R. 767). Plaintiff was prescribed medications for lower extremity edema and lower back pain and advised to eat a low salt diet. (R. 769).

The next month, on September 2, 2016, Riverview Medical examined Plaintiff again, noting a history of hand pain with current "[u]pper extremity pain location: right wrist" but included in Plaintiff's "[a]ssociated symptoms: no back pain, no decreased range of motion, no fatigue." (R. 638) (emphasis removed). At her next appointment with Raines Medical on October

she was "[a]ble to do activities of daily living with the help of pain meds" and did not mention "any drowsiness or any other significant side effects from the pain meds." (R. 559, 576).

On July 7, 2017, Plaintiff was seen at American Family Care for dysuria, fatigue, and pain. (R. 752). It was noted that Plaintiff complained of intermittent chronic pain in her right hand, having "a history of carpal tunnel syndrome" and "an injection last week." (R. 752). Overall, it was noted that Plaintiff's "musculoskeletal examination is grossly unremarkable, normal gait and posture." (R. 754).

At the beginning of 2018, Plaintiff again reported to Go Medical that her pain was "adequately controlled with dose of current opioid pain meds. There is some improvement . . . . [Plaintiff d]enies any drowsiness or sedation . . . . [and is a]ble to do more household chores [and] move around." (R. 994) (emphasis removed). In June 2019, Go Medical stated Plaintiff's "overall chronic pain from lumbar disc disease has been adequately controlled [and t]here has been at least 30% reduction of chronic pain from use of Opioid pain meds." (R. 907) (emphasis removed). Go Medical also noted that Plaintiff is "[a]ble to do non strenuous activities with help of opioid [and d]enies sedation" due to her pain medications. (*Id.*). Plaintiff again reported she was "able to do household chores, move around and do her daily activities." Throughout 2018 until June 2019, Plaintiff consistently denied drowsiness or sedation from her pain medications. (R. 907, 921, 944, 951, 957, 968, 978, 984).

## II.     ALJ Decision

Disability is determined under a five-step test. 20 C.F.R. §§ 404.1520, 416.905(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). Substantial work activity is defined as "work activity that involves doing

significant physical or mental activities," while gainful activity refers to "work activity . . . for pay or profit." 20 C.F.R. § 404.1572(a)-(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the ALJ will find the claimant "not disabled regardless of [claimant's] medical condition or [their] age, education, and work experience." 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment . . . [that] meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(ii). Absent a severe impairment, the ALJ "will find that [the claimant is] not disabled." *Id*. Third, the ALJ will "also consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment "meets or equals one of [the] listings in [A]ppendix 1 of this subpart and meets the duration requirement," then the ALJ will find that the claimant is disabled. *Id*.

At this point in the five-step test, if the ALJ has determined the claimant is not disabled, the ALJ will determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). The claimant's RFC refers to "the most the claimant can still do despite . . . limitations . . . . based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(1), (3); *see* § 404.1520(a)(4)(e). At the fourth step, the ALJ will use the RFC and look at the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (f), (h). If the claimant "can still do [their] past relevant work, [the ALJ] will find that [the claimant is] not disabled." *Id*. If the ALJ has not found the claimant to be disabled in step four, the ALJ will move on to the fifth and final step. 20 C.F.R. § 404.1520(a)(4). At step five the burden of proof shifts to the ALJ who "must provide evidence about the existence of work in the national economy that the claimant can do given the claimant's

[RFC] . . . age, education, and work experience." 20 C.F.R. § 404.1512(b)(3); *see also* 20 C.F.R. § 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 20, 2017, the date her alleged disability began. Additionally, the ALJ determined that Plaintiff has the following severe impairments: obesity, back degenerative disc disease, osteoarthritis with chondromalacia of the right knee patella, asthma, depression, bipolar and personality disorder. However, the ALJ concluded that these impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.

>The ALJ determined Plaintiff has the RFC to perform light work, except:
>
>occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping; no kneeling, crouching and crawling; frequent grasping and fingering bilaterally; avoid concentrated exposure to extreme temperatures and vibration; avoid even moderate exposure to fumes, odors, gases, poor ventilation and other pulmonary irritants; avoid all exposure to hazards such as open flames, unprotected heights and dangerous moving machinery; limited to unskilled work that is simple, repetitive, and routine with supportive, tactful, and non-confrontational supervision, and contact with supervisors and coworkers must be incidental to the work performed, e.g., assembly work; she will do best in a well-spaced work setting with few familiar co-workers and her own work area; avoid excessive workloads, quick decision making, rapid changes, and multiple demands; she will benefit from regular work breaks every two hours and a slowed pace, if possible, but would still be able to maintain a work pace consistent with competitive level work; and she would have only occasional, casual contact with the general public.

(R. 28). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (*i.e.*, nurse assistant, receiver dispatcher, order clerk, and home attendant). (R. 33). Based on Plaintiff's age, education, work experience, and RFC (in conjunction with the VE's testimony), the ALJ determined that Plaintiff could work as a bench assembler or an inspector and hand

packager, which are jobs that exist in significant numbers in the national economy. (R. 34). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by that Act and, as a result, not entitled to benefits. (R. 35).

## III. Plaintiff's Argument for Reversal

Plaintiff argues that the ALJ's determination at step five is not supported by substantial evidence. (Doc. # 15 at 18). Plaintiff maintains that her testimony is credible and that her RFC assessment should include the following limitations: (1) *occasional* grasping and fingering with her right hand and (2) frequent unscheduled work absences or being off task for more than ten-to-fifteen percent of the workday due to her pain or medication side effects. (*Id.*).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence is explained as "the Commissioner's factual findings [being] more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

As a result, when addressing the ALJ's credibility determination regarding a claimant's subjective pain testimony, this court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Cates v. Comm'r of Soc. Sec.*, 752 F. App'x 917, 920 (11th Cir. 2018) (citing *Foote*, 67 F.3d at 1562); *see also Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 656-57 (11th Cir. 2020) ("[C]redibility determinations are the province of the ALJ.") (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)). "The question is not . . . whether [the] ALJ could have reasonably credited [the] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

**V.     Discussion**

The ALJ concluded that Plaintiff was not under a disability as defined by the Act after determining that Plaintiff could work as a bench assembler or inspector and hand packager. (R. 34-35). In making this determination, the ALJ relied on the VE's testimony. (*See* R. 68-70). At the hearing, the ALJ told the VE to assume a hypothetical person who could only perform light work in addition to several other limitations and asked if there were any jobs in the national economy that the hypothetical individual would be able to perform. (R. 67-68). The VE testified that such a

hypothetical person would be able to work as a bench assembler or inspector and hand packager. (R. 68). The ALJ next told the VE to assume a second hypothetical person with the same limitations as the first as well as only frequent grasping and fingering bilaterally. (R. 68-69). The VE testified that such a second hypothetical person could perform the two jobs previously mentioned. (R. 69). The ALJ then told the VE to assume a third hypothetical person the same as the first as well as "only occasional grasping and fingering with her right dominant hand and frequent grasping and fingering with her left hand." (*Id.*). The VE testified that such a third hypothetical individual would not be able to find a job in the national economy. (*Id.*). The ALJ finally told the VE to assume a fourth hypothetical person with the same age, education, and work experience but regardless of other limitations would not be able to go to work because of fatigue. (R. 69-70). The VE testified that such a fourth hypothetical person would not be able to find a job in the national economy due to work absences. (R. 70).

Accordingly, this court must review two of the ALJ's determinations: (1) that Plaintiff was limited to frequent (rather than occasional) grasping and fingering bilaterally in her right hand and (2) discrediting Plaintiff's fatigue resulting from her pain medications. After careful review and for the reasons stated below, the court concludes that the ALJ's decision is due to be affirmed.

> **A.** **There is Substantial Evidence to Support the ALJ's Decision that Plaintiff Can Use Her Right Hand Frequently, Rather Than Occasionally.**

When a claimant alleges disability based on her pain, the Eleventh Circuit applies a three-part "pain standard." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Under that standard, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively

12

determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Thus, if a claimant testifies to disabling pain and satisfies two parts of the three-part pain standard, the ALJ must make a finding of disability *unless* the ALJ properly discredits the claimant's testimony. *See Thomas v. Comm'r of Soc. Sec. Admin.*, 2020 WL 7352571, at *2.

If the ALJ determines the claimant's alleged functional limitations are inconsistent with the objective medical evidence -- resulting in the claimant's subjective pain testimony not being fully credible -- "the ALJ 'must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms.'" *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 141 (11th Cir. 2019) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)); *see also Foote*, 67 F.3d at 1562 (providing "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding"). But "the ALJ need not cite 'particular phrases or formulations' . . . rather [only] 'enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Chatham*, 764 F. App'x at 868 (quoting *Foote*, 67 F.3d at 1562); *see also Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 677-78 (11th Cir. 2020) (finding the ALJ's credibility determination was supported by substantial evidence due to plaintiff's ability to do basic daily activities, effectiveness of medication, conservative treatment plan, and "imaging with unremarkable results").

The ALJ specifically acknowledged that Plaintiff testified that "she cannot grasp things with her hands, primarily her right [hand] … [and] had been diagnosed with having finger osteoarthiritis." (R. 29). The ALJ then generally determined that Plaintiff's "medically

13

determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 29).

Regarding her hands, the ALJ noted the following:

[Plaintiff] presented to Anniston Medical Center for an assessment. She had possible rheumatoid arthritis [and] osteoarthritis…. [But, h]er physical examination did not demonstrate[] definite joint synovitis and her joint films were not showing any inflammatory damage at the time. Therefore, a diagnosis could not be confirmed. The films were showing … some mild changes in the hands.

(R. 30). The ALJ also acknowledged the medical opinions of Dr. Celtin Roberts and the state agency physician. (R. 32). Dr. Robert's examination found:

[Plaintiff] is [bilaterally] able to grip and hold objects securely to the palm by the last three digits. [Plaintiff] is able to grasp and manipulate both large and small objects with the first three digits. [Plaintiff's] thumb functions with normal opposition. There is no evidence of myotonia or grip release. There is no evidence of localized tenderness, erythema, or effusion. There is no evidence of diminution of function with repetition. There is no evidence of spasticity or ataxia. Normal sensation to touch and pinprick in all fingers. Joint position and vibration sense are normal. Subjective and objective findings are consistent.

(R. 701). And the state agency physician did not place a limitation on Plaintiff's grasping or fingering bilaterally. (R. 111). However, based on Plaintiff's testimony, the ALJ found that Plaintiff had the additional limitation of "frequently grasping and fingering bilaterally." (R. 32).

It was not error for the ALJ to properly discredit Plaintiff's testimony to the contrary because there is substantial evidence to support the ALJ limiting Plaintiff to frequent (rather than occasional) grasping and fingering bilaterally in her right hand. After a review of Plaintiff's medical record, the court acknowledges that she has reported troubles with both her hands.

However, there is no basis for setting aside the ALJ finding.

The first instance of hand pain in the medical record dates back to a January 2015 visit to Northeast Orthopedic Clinic, where Plaintiff presented with problems with *left* hand pain. (R. 833). Upon examination, Plaintiff was found to have a full range of motion in her fingers; her sensation was intact; and x-rays were negative. (R. 835). In July 2015, Dr. Ready (a rheumatologist at Anniston Medical Clinic) evaluated Plaintiff for rheumatoid arthritis. (R. 712). But, the physical exam did not demonstrate joint synovitis, and the joint films did not show any inflammatory damage. (*Id.*). So, Dr. Ready could not confirm that Plaintiff had rheumatoid arthritis. (*Id.*). Also, there is a history of carpal tunnel in both wrists beginning in her left wrist on March 3, 2017, and her right wrist on June 29, 2017. (R. 554, 559, 563). However, there is also a record that Plaintiff's pain was being treated. (R. 559).

Again, it is not the district court's role to reweigh the evidence (*i.e.*, to determine whether the ALJ could or even should have credited Plaintiff's testimony). Rather, the district court must determine whether the ALJ was clearly wrong to discredit Plaintiff's testimony. *See Werner* 421 F. App'x at 939. Here, there is substantial evidence to support the ALJ's determination limiting Plaintiff to frequent (rather than occasional) grasping and fingering bilaterally in her right hand.

> **B.     There is Substantial Evidence to Support the ALJ's Decision to Not Credit Plaintiff's Subjective Testimony Concerning the Side Effects of Her Pain Medication.**

"An ALJ's determination that medication side effects do not present a significant problem is supported by substantial evidence if the claimant made only an isolated complaint about the side effects and the record does not suggest her doctors were concerned about the side effects." *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (citing *Swindle v. Sullivan*, 914

15

F.2d 222, 226 (11th Cir. 1990)). In fact, "failure to report side effects to [her] physicians is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record." *Werner*, 421 F. App'x at 938; *see also Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 297-98 (11th Cir. 2011).

Plaintiff testified that due to her back pain and related prescriptions, she is "always tired and taking medications." (R. 57). Plaintiff continued that her medication "helps enough for [her] to go to sleep. As long as [she] can go to sleep and not deal with the pain, [she is] fine." (R. 58). More specifically, Plaintiff said that the medication brings her pain from a six or seven down to a two. (R. 59). And, Plaintiff testified that she cannot do daily activities when she takes her pain medication. (R. 58).

In his decision, the ALJ specifically recognized Plaintiff's testimony that her medicine brought her pain down to a two out of ten but that the medication also caused her to sleep four hours during the day. (R. 29). Then, the ALJ generally determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 29).

In discrediting Plaintiff's allegations of fatigue and medication side effects, the ALJ found that "[c]ontrary to [Plaintiff's] testimony, when she was seen with Go Medical Group, it was noted that her pain was adequately controlled with her current medications. … She was able to do household chores, move around and do her activities of daily living." (R. 31). The medical record as a whole supports the ALJ's findings (and the Go Medical Group's notations), as Plaintiff stated

16

to physicians on numerous occasions that she did not experience side effects from her pain medication. (*See* R. 559, 576, 581, 907, 921, 944, 957, 968, 978, 984). Thus, it is clear from the record that the ALJ discredited Plaintiff's allegation of fatigue caused by her pain medication (or any other source), and there is substantial evidence supporting the ALJ's determination.

**VI. Conclusion**

There is substantial evidence to support the ALJ's determinations to discredit Plaintiff's subjective testimony concerning the use of her right hand and fatigue from her pain medication. Based on these two determinations, Plaintiff is most similar to the ALJ's second hypothetical person during his questions directed to the VE. Accordingly, the ALJ properly relied on the VE's testimony that the second hypothetical person could work as a bench assembler or inspector and hand packager.

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 16, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE